# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

CHARLES V. SHIRLEY
Plaintiff,

V.                                                   CIVIL ACTION: _____

FLUOR CONSTRUCTORS
INTERNATIONAL, INC. and
LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON
Defendants,

## COMPLAINT

1.      Plaintiff, Charles V. Shirley ("Mr. Shirley") brings this action against Fluor Constructors International, Inc. ("Fluor") and Liberty Life Assurance Company of Boston ("Liberty") for violation of the Employment and Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001, et seq., ("ERISA"). Mr. Shirley was a participant in Fluor's short-term and long-term disability group plan, an ERISA disability benefit plan, believed to be self-insured by his longtime employer Fluor and administered by Liberty. This Complaint challenges the Defendants' unlawful denial of Mr. Shirley's request for short-term and long-term disability benefits despite medical evidence demonstrating his qualification for said benefits during his eligibility period as an insured under the disability benefit plan. Mr. Shirley is filing this action to recover past-due and future benefits due under a policy or plan of disability insurance to enforce his rights existing therein, to declare his rights under the terms of the policy or plan, to recover pre-judgment interest, and to recover costs and attorney's fees as provided by ERISA.

## JURISDICTION

2.      This Court has personal and subject matter jurisdiction over this case pursuant to 29 U.S.C. §1132(e) and (f) because of the Defendants' breach of their ERISA obligation to him.

3.      Plaintiff Charles V. Shirley is a resident of Pointe Coupee Parish, Louisiana.

CLAIM FOR JUDICIAL REVIEW AND DECLARATORY JUDGMENT

4.      Plaintiff Charles V. Shirley, at all times pertinent hereto, was a participant within the meaning of 29 U.S.C. §1002(2)(7) in the group short-term disability ("STD") and long-term disability ("LTD") plan (sometimes referred to hereafter as "Disability Plan") that was believed to be self-insured by Plaintiff's employer, Fluor, and administered by Liberty.

5.      Plaintiff Charles V. Shirley has standing to bring this action under ERISA, 29 U.S.C. §1132(a).

6.      Defendant Fluor Corporation has its corporate headquarters located at 6700 Las Colinas Boulevard, Irving, Texas 75039 and Defendant Liberty Life Assurance Company of Boston has its corporate headquarters located at 100 Liberty Way, Dover, New Hampshire 03820. The Disability Plan is believed to be self-insured by Fluor Corporation and administered by Liberty Life Assurance Company of Boston.

7.      Defendants are for-profit companies and do business in the State of Louisiana, deriving revenue from the business they conduct in Louisiana.

8.      The Disability Plan under which Plaintiff is suing is a group disability plan believed to be self-insured by Fluor and administered by Liberty.

9.      Despite repeated requests to Fluor and Liberty, made personally by Plaintiff and by Plaintiff's counsel, Fluor and Liberty have refused to provide plaintiff and his counsel with a copy of the short-term and long-term disability policies and/or plan documents as required by ERISA.

10.     Mr. Shirley began experiencing disabling health conditions in July 2014 when he began suffering from gait imbalance, ataxia, neuropathy, and strokes, among other things, that caused him to have falls and required him to use a walker or cane to ambulate. As a result, Mr.

Shirley began receiving short-term disability benefits from Fluor and Liberty shortly thereafter. These short-term disability benefits ended on or about January 8, 2015.

11.      Per Liberty's claim file, around November 2014, due to the temporary nature and upcoming exhaustion of his short-term disability benefits and his continuing disability, Mr. Shirley applied for long-term disability benefits with Fluor and Liberty.

12.      Per Liberty's claim file, at the end of January 2015 and/or very beginning of February 2015, Liberty's consulting neurologist repeatedly attempted to contact Mr. Shirley's treating neurosurgeon, Dr. Joseph Acosta, at the Neuromedical Center in Baton Rouge, Louisiana, for a phone consultation, but was never able to obtain a response. Mr. Shirley repeatedly attempted to contact Dr. Acosta during this time period to request that he speak to Liberty's consulting neurologist, but could never make contact with him, receive a return call, or receive some form of acknowledgment.

13.      Sometime around January 30, 2015 or February 1, 2015, Dr. Acosta ceased seeing patients at the Neuromedical Center, including Mr. Shirley. Per Liberty's claim file, on January 30, 2015, Dr. Acosta sent Liberty's consulting neurologist a written response advising that Mr. Shirley's neurologic problems with vertigo and ataxia had been compounded by "a continuous weakness and maybe even worsening of this weakness in his legs and that a recent EMG nerve conduction study revealed a peroneal neuropathy versus an L5-S1 radiculopathy bilaterally." Dr. Acosta further stated that "an MRI of the lumbar spine shows that indeed he has moderate to severe lumbar stenosis at several levels that is probably compounding the weakness" and that he thought that "as far as the actual range, amounts of weight, and endurance that he can experience I think he needs a functional capacity exam." Shortly thereafter, Mr. Shirley's care was transferred to Dr. Charles Bowie at the Neuromedical Center who he continues to treat with to this day. Nevertheless,

on or about February 3, 2015, Fluor and Liberty denied Mr. Shirley's claim for long-term disability, establishing that they did not find Mr. Shirley disabled as of February 3, 2015, and stated in the denial letter that a response was never received from Dr. Acosta. Although Mr. Shirley did not appeal this denial, he returned to employment with Fluor shortly thereafter on March 9, 2015 and worked while he was disabled from July 11, 2015 – November 11, 2015, November 26, 2015 – January 20, 2016, and February 6, 2016 – July 31, 2016. By employing Mr. Shirley during these time periods, as a covered participant in Fluor's STD and LTD plans, while he was disabled, Fluor and Liberty "opened the door" for another disability claim by Mr. Shirley and are obligated to examine the medical evidence to determine if Mr. Shirley was disabled during his times of active employment and prior to his termination.

14.    On February 4, 2015, Mr. Shirley saw nurse practitioner, Sharon Mencer-Matthews, at the Neuromedical Center. Ms. Matthews advised Mr. Shirley, among other things, not to sit or attempt to ambulate for long periods of time and that the weakness in his legs made him a high fall risk. Ms. Matthews noted that an "EMG/NV showed bilateral peroneal nerve injury" and that "his lumbar MRI shows degenerative disc disease" and further noted that she would "refer him to neurosurgery, as well as to rheumatology for his abnormal ANA" and that "he is not able to return back to work at this time."

15.    On February 9, 2015, Mr. Shirley saw his new neurosurgeron, Dr. Charles Bowie, who stated he had "complaints of classic neurogenic claudication" and noted "I reviewed his MRI, he has a lumbar stenosis from L3 down to S1 worse at L3-4 and L4-5 with right-sided disc herniations."

16.    Per Liberty, Mr. Shirley returned to work at Fluor on or about March 9, 2015 and worked for intermittent terms of active employment during July 11, 2015 – November 15,

2015; November 26, 2015 – January 20, 2016; and February 2, 2016 – July 31, 2016, during which he was covered by Fluor's STD and LTD policies or plans. Mr. Shirley submits that upon his return to work he worked in a sedentary job, but due to his disabling medical conditions he could only tolerate working for limited periods of time. Mr. Shirley remained on some level of employment status with Fluor and worked a final assignment for a few days, in Delaware or Maryland in late 2016.

17.    During his intermittent period of active employment with Fluor, Mr. Shirley worked while he was disabled and received treatment from Broussard Chiropractic, for his back and neck pain, from August 14, 2015 – August 24, 2015, October 9, 2015 – October 12, 2015, and April 27, 2016 – June 10, 2016. Based on Mr. Shirley's earlier STD claim and denied LTD claim, Fluor and Liberty, having reviewed Mr. Shirley's pre-February 4, 2015 medical records submitted with those claims, had knowledge and were on notice that Mr. Shirley was working while disabled during the above mentioned periods of active employment.

18.    Mr. Shirley returned to Dr. Bowie on September 13, 2016 complaining of low back pain radiating into his right leg all the way to the bottom of his foot. Dr. Bowie noted that, per Mr. Shirley, "this has been going on for years, but however became excruciating this past January" and noted that "he experiences approximately 1 fall per week, has numbness in the same distribution of the right leg, and has had a few episodes of both bowel and bladder incontinence during his sleep." Dr. Bowie also noted that Mr. Shirley had been treated by a chiropractor since he had last seen him on or about February 9, 2015.

19.    Dr. Bowie performed a lumbar fusion with hardware, on Mr. Shirley, on December 7, 2016 and a cervical fusion with hardware, on Mr. Shirley, on March 20, 2017. Medical records related to these surgeries were submitted with the June 21, 2018 appeal of the

January 25, 2018 disability claim denial.

20.      Plaintiff has personally tried to obtain his employment records from Fluor, but has not been provided with this information. Plaintiff's counsel, in an effort to establish any formal termination of employment dates and other pertinent employment history information from Fluor, received a letter from Fluor's in-house counsel advising they would not provide said records when the law does not require them to do so. A review of the Liberty claim file indicates that a human resources representative, with Fluor, states that Mr. Shirley was terminated as of October 16, 2016. However, Mr. Shirley does not have any record of ever receiving a formal employment termination letter, email or other form of written communication.

21.      Mr. Shirley applied for social security disability benefits in April of 2017 and was approved without having to reapply or file an appeal. The approval letter from the Social Security Administration states "we found that you became disabled under our rules on November 15, 2016." However, it is believed that Social Security only looked back several months from the date of application in establishing its date of disability.

22.      Due to Fluor and Liberty's repeated refusal to provide Plaintiff and his counsel with copies of the short-term and long-term disability policies or plans, Plaintiff and his counsel have had to "blindly" appeal Fluor and Liberty's denial of Plaintiff's short-term and long-term disability benefits requests without the benefit of having the short-term and long-term disability policies and/or plan documents and their pertinent provisions.

23.      By letter dated January 8, 2018, mailed by certified mail, and addressed to Liberty, Plaintiff's counsel filed a claim for long-term disability benefits on behalf of Mr. Shirley and requested a certified copy of the Fluor Corporation long term disability group policy. By letter dated February 14, 2018, mailed by regular mail, and addressed to Ms. Christy Naugle with Fluor's

human resources section, Plaintiff's counsel requested a copy of all documents in Mr. Shirley's personnel file and/or employment records and enclosed an Employment Records Authorization signed by Mr. Shirley. By letter dated February 14, 2018, mailed by regular mail, and addressed to Liberty's case manager assigned to Mr. Shirley's claim, Plaintiff's counsel requested a certified copy of the entire Fluor Corporation disability benefits group policy. By letter dated April 4, 2018, mailed by certified mail, and addressed to Liberty's case manager assigned to Mr. Shirley's claim, Plaintiff's counsel again requested a certified copy of the entire Fluor Corporation disability benefits group policy, including but not limited to the policies for short-term and long-term disability benefits and noted Mr. Shirley's right to this information under ERISA. By letter dated April 4, 2018, mailed by certified mail, and addressed to Fluor's disability plan administrator/benefits representative, Plaintiff's counsel advised that Liberty had advised Plaintiff's counsel that the short-term and long-term group disability policies must be obtained from Fluor and requested said information from Fluor as required by ERISA. In response to the foregoing requests, Liberty advised that the disability policies must be obtained from Fluor since Liberty provides administrative services only. Fluor advised that it would not disclose the employment records when not required to do so by law and that Mr. Shirley was not covered by any group disability plan at the time of his separation on October 16, 2016 and was thus unable to provide a copy of any group disability plan covering Mr. Shirley.

24.     Mr. Shirley's disability claim case presents issues as to fact and law regarding eligibility for disability benefits under the Fluor group plans. This, among other things, is due to the fluid onset date of Mr. Shirley's disability with symptoms beginning in July 2014 while employed by Fluor as a Director of Operations and Manager, his continuing and worsening disability since July 2014 through and after his long-term disability claim was denied on February

3, 2015, Fluor's determination that Mr. Shirley was not disabled as of February 3, 2015, Mr. Shirley's return to work on March 9, 2015 and for the periods of July 11, 2015 – November 15, 2015, November 26, 2015 – January 20, 2016, and February 6, 2016 – July 31, 2016 after said denial, his remaining as an employee of Fluor and/or its subsidiaries until possibly on or about October 16, 2016 or later, his working an assignment for Fluor or its wholly owned subsidiary on in Fall 2016, and his continuing and worsening disability from July 2014 throughout his continued employment with Fluor and thereafter.

25.    The facts of Mr. Shirley's case and the unorthodox manner in which Fluor and Liberty have handled said claim favor the applicant receiving a de novo review, especially in light of the analysis and holdings in the U.S. Fifth Circuit's recent *en banc* decision in Ariana M. v. Humana Health Plan of Texas, Inc., 884 F.3d 246 (5 Cir. 3/1/18). Providing some insight into how the withheld plan documents may set the disability plan administrative framework and delegation of authority, between Fluor and Liberty, and establish the proper standard of review is the fairly recent case of Miller v. PNC Financial Services Group, Inc., 278 F.Supp.3d 1333 (S.D. Fla. 2017).

26.    On January 8, 2018, Plaintiff's counsel filed a written claim for long-term disability benefits with Liberty, by certified mail, on behalf of Plaintiff, and requested in said claim demand that a certified copy of the Fluor long-term disability group policy be provided to Plaintiff's counsel. Plaintiff's counsel was subsequently contacted by telephone, by Elizabeth Kiernan ("Ms. Kiernan"), the Liberty Disability Claims Technical Specialist that, by letter dated February 3, 2015, had denied Plaintiff's long-term disability claim filed around November 2014. Ms. Kiernan advised Plaintiff's counsel that a short-term disability claim must be filed first and that it must be initiated by Plaintiff. Based on this directive, Plaintiff filed a short-term disability

claim, by telephone, with Liberty in January 2018. A January 25, 2018 letter denying the short-term disability claim followed and the requested Fluor long-term disability group policy or plan was never provided to Plaintiff's counsel.

27.     On June 21, 2018, Plaintiff submitted his request for an appeal of the January 25, 2018 denial and submitted extensive medical records covering Mr. Shirley's medical treatment from July 2014 through October 2017. This appeal was later supplemented with physical therapy records and other miscellaneous medical records, documentation and the approval letter for Mr. Shirley's initial application of social security disability benefits, and a letter from Mr. Shirley's treating neurosurgeon, Dr. Charles Bowie. With each submission of evidence, Plaintiff's counsel requested, by cover letter, that the records be filed in the administrative record, in globo, with other documentation and evidence in the present and past disability claim files for Mr. Shirley.

28.     On October 4, 2018, Plaintiff received a letter from Liberty denying his appeal of Liberty's denial of Plaintiff's request for long term disability benefits. The letter, among other things, stated that Plaintiff had been unable to provide medical records requested by Liberty for the time period of July 2015 – August 2016, that Plaintiff had not shown good cause for not filing his short/long term disability within a year of the onset of his disability, and that Plaintiff was entitled to a second appeal that must be filed within 180 days. A copy of this letter is attached hereto as Exhibit "A". Plaintiff submits that Louisiana's ten (10) year prescriptive period applicable to contract applies to timeliness in this proceeding.

29.     On March 15, 2019, Plaintiff mailed, with an affidavit from Mr. Shirley, a letter from Mr. Shirley's treating neurosurgeon ("Dr. Bowie"), and records from Mr. Shirley's chiropractor to be filed in the administrative record, via certified mail, his letter timely requesting the second appeal that Liberty afforded him through its October 4, 2018 denial letter.

Unfortunately, the U.S. Postal Service tracking service revealed that, by March 22, 2019, the letter had not made it to the address provided in Liberty's October 4, 2018 denial letter. Ultimately, the unsigned and undated "green card" was returned to Plaintiff's counsel and the tracking information revealed that the March 15, 2019 appeal letter/packet had been returned to Baton Rouge, Louisiana. Copies of Plaintiff's March 15, 2009 along with the tracking information are attached hereto as Exhibit "B".

30.    Out of an abundance of caution, Plaintiff's counsel mailed another timely appeal letter with the same supporting documentation provided with the March 15, 2019 letter, by priority mail signature, on March 25, 2019, to the same address. The priority mail arrived at the post office box address listed in Liberty's October 4, 2018 denial letter and a notice to pick up the priority mail was placed in the post office box. After not being picked up for several days, the postal service returned the priority mail to Plaintiff's counsel marked unclaimed. Copies of the second appeal letter mailed on March 25, 2019, the priority mail marked unclaimed, and the tracking history are attached hereto as Exhibit "C".

31.    Plaintiff has been deprived of the full and fair review ERISA mandates from a plan administrator and has further been deprived of long term disability benefits to which he is entitled from November 2014 or January 2015 to the present and continuing in a sum to be determined at trial.

32.    As a further direct and proximate result of the denial of benefits, Plaintiff has been required to incur attorney fees to pursue this action, and is entitled to have such fees paid by Defendants pursuant to 29 U.S.C. §1132(g)(1), ERISA §502(g)(1).

33.    A controversy now exists between the parties as to whether Plaintiff is entitled to short and long term disability benefits under Fluor's Disability Plan. Plaintiff seeks the

declaration of this Court that he is entitled to disability benefits from January 2015 through the present and a determination of his future disability benefits from the present date forward.

<u>CLAIM FOR ERISA PENALTIES AGAINST FLUOR AND LIBERTY</u>

34.    Plaintiff incorporates herein by reference paragraphs 1 through 29 above.

35.    Defendants' failure to provide Plaintiff with a copy of the Disability Plan documents within thirty days of his written request to Liberty dated January 8, 2018 and written request to Fluor dated April 4, 2018 constituted a direct violation of 29 U.S.C. §1024(b)(4), which provides in pertinent part: "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated plan description . . . under which the plan is established or operated."

36.    Defendants' violation of 29 U.S.C. §1024(b)(4) entitled Plaintiff to penalties in the sum of $110 per day pursuant to 29 U.S.C. §1132(c)(1), which provides in pertinent part: "Any administrator who . . . fails or refuses to comply with a request for any information which such administrator is required by this title to furnish participant or beneficiary [within thirty days of receiving such request] . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount up to $110 per day from the date of such failure or refusal and the court may, in its discretion, order such other relief as it deems proper."

37.    As required by the Debt Collection Improvement Act of 1996, the $100 per day penalty was increased to $110 per day for violations occurring after July 29, 1997, per 62 Fed. Reg. 40696.

38.    Plaintiff requested a copy of the short-term and long-term Disability Plan documents from Liberty, by letter, on January 8, 2018, February 14, 2018, and April 4, 2018 and was advised by Liberty that these documents must be requested from Fluor. Following Liberty's

directive, Plaintiff requested the Disability Plan documents, by letter, from Fluor on April 4, 2018. Fluor's in-house counsel responded, by letter, alleging that Plaintiff was not covered by the Disability Plan on or about October 16, 2016, so there were no Disability Plan documents that could be provided to him. As of this date, Plaintiff has not received the requested Disability Plan documents, thus the thirty day period for providing said documents, contained in the statute, has long expired. Plaintiff is therefore entitled to penalties at the rate of $110 per day commencing on or about February 15, 2018 (per return receipt, 30 days from the date Liberty received Plaintiff's request) or on or about May 9, 2018 (per return receipt, 30 days from the date Fluor received Plaintiff's request) and continuing to run.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1.     A declaration by this Court that he is disabled under the Disability Plan's provisions for purposes of long-term disability from December 2014 through the present and shall continue to receive future long-term disability benefits in accordance with the limits contained in the Disability Plan;

2.     An award of long-term disability benefits from January 2015 to the present, together with interest at an appropriate rate on each monthly payment from the date it became due until the date it is paid;

3.     An award of future long-term disability benefits from the present forward and in accordance with any limitation on such benefits contained in the Disability Plan.

4.     Any award of short-term disability benefits that the Court sees fit under the facts as applied to the Disability Plan.

4.     An award of penalties at the rate of $110 per day for a time period to be fixed by this Court;

5.      For reasonable attorney fees and costs incurred in this action; and

6.      For such other and further relief as this Court deems just and proper under the circumstances.

Dated: April 15, 2019.

Respectfully submitted:


_____/s/ Neal R. Elliott, Jr._____
Neal R. Elliott, Jr. (La. Bar Roll # 24084)
4310 Highland Road
Baton Rouge, Louisiana 70808
Telephone: (225) 907-5763
Email: nrelaw@hotmail.com